**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

AHMED MCLEAN,

                                        Petitioner,

            -against-                                    **REPORT &**
                                                        **RECOMMENDATION**
GARY GREEN, Superintendent                              **CV-05-5603 (SLT)(SMG)**

                                        Respondent.
-----------------------------------------------------------------X

*Gold, S., United States Magistrate Judge*

## Introduction

Petitioner, Ahmed McLean ("McLean"), brings this petition for a writ of habeas corpus

*pro se* pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

U.S.C. § 2254.  McLean was convicted after trial in New York Supreme Court, Queens County,

of robbing several employees at a commercial premises and other related charges.  In his petition,

McLean challenges his conviction on seven grounds: (1) denial of his right to be present at all

stages of the trial, including side bar conferences held during jury selection; (2) prejudicial and

burden-shifting statements made during the prosecutor's summation; (3) an unconstitutional jury

charge; (4) the court's failure to respond meaningfully to notes from the jury; (5) the court's use

of an improper verdict sheet; (6) ineffective assistance of trial counsel; and (7) an unreasonable

delay in sentencing.[1]  *See* Habeas Pet. 4.  *See also* Pet'r Habeas Reply.[2]  United States District

---

[1]The grounds McLean asserts in support of his claim for habeas relief are set forth in
paragraph thirteen of his habeas petition in a single sentence and are not numbered.  I have
numbered the grounds for ease of reference.

[2]"Habeas Pet." refers to McLean's Petition for Writ of Habeas Corpus, Docket Entry 1.
"Pet'r Habeas Reply" refers to McLean's Affidavit in Support of Petitioner's Reply to

Judge Sandra L. Townes has referred the petition to me for a report and recommendation.

Docket Entry 14. For the reasons stated below, I respectfully recommend that McLean's petition

be denied.

## Background

### A.     The Evidence at Trial

On July 27, 1998, McLean, along with two other men, entered a building where a

business called Integrated Cable Installations had offices. Resp. Habeas Aff. 3.[3] Once inside, the

three men asked for employment applications, but then announced a robbery. *Id.* The

prosecution's case at trial included the testimony of employees who were present at the robbery,

a tape recording of a 911 call from one of the employees on which the petitioner's voice could be

heard, the property taken from the witnesses, and a gun used by the perpetrators during the course

of the robbery.

Gregory Lawrence, an employee of Integrated Cable Installations, testified at trial about

the events that took place. Lawrence identified McLean at trial as one of the men who

participated in the robbery. Tr. 991-92.[4] After the men announced that they were there to

commit a robbery, Lawrence ran into an adjacent office to call the police. Tr. 996. McLean then

kicked in the office door and ripped the phone out of the wall. Tr. 997-98, 1018. During

Lawrence's direct testimony, the prosecution introduced a tape recording of the 911 call, and

Respondent's Opposition to Petition for Writ of Habeas Corpus, Docket Entry 11.

[3]"Resp. Habeas Aff." refers to Respondent's Affidavit in Opposition to Petition for a Writ of Habeas Corpus, submitted March 6, 2006, Docket Entry 5.

[4]"Tr." refers to the transcript of McLean's state court trial.

Lawrence identified McLean's voice as well as his own. Tr. 1015-17. After McLean ripped the phone from the wall, McLean's accomplice grabbed Lawrence and brought him to an area where the other Integrated employees were already lying on the floor. Tr. 999. The robbers then directed the employees to empty their pockets, and started to pick up the employees' belongings. Tr. 1004-06. At or about this time, the robbers noticed a video monitor depicting an area outside of the offices. Observing the police approaching on the monitor and seeking to avoid apprehension, McLean and his accomplices got on the floor with their victims and pretended to be employees of Integrated Cable Installations. Tr. 1004-09. A police SWAT team then entered the building and brought each person out in handcuffs. Once they identified Lawrence as an Integrated employee, the SWAT team had Lawrence identify whether each person coming out of the building was a fellow employee or an intruder. Tr. 1009-10. Lawrence identified McLean at the scene as one of the robbers and testified that McLean held a gun at certain points during the robbery. Tr. 1002, 1010.

Malcolm Sealy, another Integrated employee, described the robbery as Lawrence had. Tr. 1120. Sealy further testified that, once everyone had been removed from the building, he also identified McLean as one of the perpetrators. Tr. 1126. Robynson Baez, Maurice Johnson and Ernest Mathieu, all employees of Integrated, also testified at trial, similarly describing the robbery and identifying McLean as one of the perpetrators. Tr. 1211, 1278, 1352-58.

Police Officer Richard Thompson, one of the responding officers, testified that he observed McLean at the scene of the crime, standing in a doorway with a silver gun in his hands. Tr. 1433. Officer Thompson testified that Gregory Lawrence, Ernest Mathieu, and Sirron Farmer, a former employee who was unavailable to testify at trial, identified McLean at the scene

3

as one of the robbers.  Tr. 1438.  Officer Thompson then testified that these same men identified the gun that was used in the robbery.  Tr. 1440.

Police Officer Walter Szachacz, an Emergency Services officer who responded to the robbery, also testified.  Tr. 1511-25.  Officer Szachacz testified that he entered and searched the building, handcuffed each person he encountered, and removed them from the building. Tr. 1516-17, 1520-23.  Officer Szachacz then identified McLean as one of the individuals he removed from the building.  Tr. 1518.

The prosecution introduced a gun into evidence.  Tr. 1455-58.  Officer Thompson testified that the gun was recovered from the scene by Officer Szachacz.  Tr. 1455.  Finally, the prosecution introduced the property that was taken from the employees.  Tr. 1442-55.

McLean presented no evidence at trial.  Tr. 1526.  On May 23, 2000, the jury found McLean guilty of six counts of Robbery in the First Degree, N.Y. Penal Law § 160.15; six counts of Robbery in the Second Degree, N.Y. Penal Law § 160.10; six counts of Unlawful Imprisonment in the First Degree, N.Y. Penal Law § 135.10; Burglary in the Second Degree, N.Y. Penal Law § 140.25; and Criminal Possession of Stolen Property in the Fifth Degree, N.Y. Penal Law § 165.40.  On September 6, 2001, McLean was sentenced as a second felony offender on the most serious charges of which he was convicted to concurrent twenty-year terms.  Sent'g Tr. at 20-23.

**B.      Post-trial State Court Procedural History**

After he was convicted, McLean filed a post-trial motion to set aside the verdict pursuant to Section 330.30(1) of New York Criminal Procedure Law on various grounds, some of which are raised in this habeas petition.  *See* July 10, 2000 Tr.  The motion was denied on July 24,

2001.  *See People v. McLean*, No. 2915/98 (N.Y. Sup. Ct. Queens County July 24, 2001)

(hereinafter "Section 330 Decision").  After his sentencing in September, 2001, McLean brought

an appeal.  On March 15, 2004, the Appellate Division, Second Department, affirmed McLean's

conviction.  *People v. McLean*, 772 N.Y.S.2d 856, 5 A.D.3d 608 (2d Dep't 2004).  McLean's

subsequent application for leave to appeal to the New York Court of Appeals was denied on May

10, 2004.  *People v. McLean*, 2 N.Y.3d 803, 781 N.Y.S.2d 302, 814 N.E.2d 474 (2004).  McLean

then moved to vacate his conviction pursuant to Sections 440.10 and 440.20 of New York

Criminal Procedure Law.  This motion was also denied.  *People v. McLean*, No. 2915/98 (N.Y.

Sup. Ct. Queens County May 4, 2005) (hereinafter "Section 440 Decision").  McLean sought

leave to appeal the denial to the Appellate Division, but his request was denied.  *People v.

McLean*, No. 2915/98 (2d Dep't Sept. 8, 2005).

**AEDPA's Procedural Requirements and Legal Standards**

This court's review of McLean's petition is governed by AEDPA, 28 U.S.C. § 2244.

Before reaching the merits of McLean's claims, I review the procedural requirements imposed by

AEDPA.

**A.      Statute of Limitations**

McLean filed his petition within the one-year limitations period set by Congress in

AEDPA.  *See* 28 U.S.C. § 2244(d)(1).  A conviction becomes final when the ninety-day period

following final state court review for seeking a writ of certiorari to the United States Supreme

Court has expired.  *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003).  McLean's ninety-day

period expired and AEDPA's statute of limitations began to run on August 8, 2004, or ninety

days after the New York Court of Appeals denied him leave to appeal on May 10, 2004.

However, McLean instituted collateral proceedings on February 22, 2005, which did not conclude until September 8, 2005. Because AEDPA's limitations period is tolled during the pendency of a post-conviction application for collateral review, 28 U.S.C. § 2244(d)(2), McLean's time to file a habeas petition was extended by approximately six months, or from August 2005 to February 2006. Accordingly, McLean's petition, filed on November 1, 2005, is timely.

**B.     Exhaustion**

AEDPA requires that habeas petitioners serving state sentences first exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347 (2004).

> State remedies are deemed exhausted when a petitioner has:
> (i) presented the federal constitutional claim asserted in the petition
> to the highest state court (after preserving it as required by state
> law in the lower courts) and (ii) informed that court (and lower
> courts) about both the factual and legal bases for the federal claim.

*Ramirez v. Attorney General of New York*, 280 F.3d 87, 94 (2d Cir. 2001). In *Baldwin*, the Supreme Court held that "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." 541 U.S. at 32, 124 S. Ct. at 1351.

Respondent argues that each of petitioner's claims, except for those involving the prosecutor's summation, the verdict sheet, and sentencing delay are unexhausted because they were not fairly presented to the New York Court of Appeals. Resp. Habeas Aff. 8. More specifically, respondent argues that merely making a passing reference to petitioner's *pro se*

supplemental brief to the Appellate Division in the papers submitted to the Court of Appeals was insufficient to give the Court a fair opportunity to consider the claims it contained. *Id.* at 27-29. Additionally, respondent asserts that petitioner's *pro se* supplemental brief failed to articulate a federal constitutional basis for most of his claims. *Id.* at 29-36. For these reasons, argues respondent, this court may not consider those claims on habeas review.

In support of this argument, respondent cites *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000). In *Jordan*, a habeas petitioner argued only one claim in his brief to the Court of Appeals, and then made a "passing reference" to other claims set forth in his Appellate Division briefs; more specifically, the petitioner's letter to the Court of Appeals asked that he "be given permission to appeal '[f]or all of these reasons and the reasons set forth in his Appellate Division briefs.'" *Id.* The Second Circuit found this vague reference to the briefs insufficient to fairly apprise the New York Court of Appeals of the remaining claims in the briefs. However, the Circuit Court stated in dictum that:

> [h]ad appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only "requested that the Court of Appeals consider and review all issues outlined in defendant-appellant's brief," the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals.

*Id.* at 199 (citation omitted). *See also Michaels v. Portuando*, 2002 WL 1732813, at *10-11 (E.D.N.Y. July 23, 2002) (discussing the development of this distinction in Second Circuit case law and applying it to facts similar to those presented here).

In this case, petitioner's letter to the Court of Appeals did not make a mere "passing reference" to the claims presented in the Appellate Division briefs. Rather, it clearly and

explicitly asked "[the Court of Appeals] to consider and review all issues raised in the enclosed main and *pro se* supplemental briefs for Defendant-Appellant, including the arguments on federal constitutional grounds appellant raised in those briefs." Letter of Joshua M. Levine to the New York Court of Appeals dated March 22, 2004, at 2. This explicit reference is precisely what the Second Circuit's dictum in *Jordan* contemplated.

Respondent's argument that petitioner's *pro se* brief did not apprise the Court of Appeals of the federal nature of his claims is similarly without merit. Although petitioner cites to the New York State Constitution and New York State case law to support his claims, he also cites to the United States Constitution and various Supreme Court precedents. *See generally* Pet'r Supp. Br.[5] These references were sufficient to apprise the Appellate Division and the New York Court of Appeals of the federal basis for his claims. *See Baldwin*, 541 U.S. at 32, 124 S. Ct. at 1351 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

For these reasons, I find that petitioner has fairly presented all of his claims to the highest state court in which a decision could be had either on direct review or on collateral attack.[6]

---

[5]"Pet'r Supp. Br." refers to Petitioner's *Pro Se* Supplemental Brief, filed in support of his appeal to the Appellate Division.

[6]Several of petitioner's claims, including those asserting ineffective assistance of counsel, could not be raised on direct appeal and were presented instead by way of a post-conviction motion. *See* Petitioner's Affidavit in Support of Motion to Vacate Judgment dated February 22, 2005 ("Aff. Vacate Judg."). These claims were thus presented and addressed by the state court and are exhausted.

Having concluded that petitioner exhausted his remedies in state court pursuant to 28 U.S.C.

§ 2254(b)(1)(A), I now address the merits of petitioner's claims.[7]

## Petitioner's Claims for Habeas Relief

AEDPA's deferential standard provides that a federal court may not grant a writ of habeas

corpus to a state prisoner on a claim that was adjudicated on the merits in state court

> unless the adjudication of the claim (1) resulted in a decision that
> was contrary to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme Court of the
> United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Price v. Vincent*, 538 U.S. 634, 639-40, 123 S. Ct. 1848, 1852-53

(2003). Thus, under AEDPA, a federal habeas court may not issue a writ simply because it

decides that the state court applied Supreme Court precedent incorrectly. *Price*, 538 U.S. at 641,

123 S. Ct. at 1853. Rather,

> [u]nder the "contrary to" clause, a federal habeas court may grant
> the writ [only] if the state court arrives at a conclusion opposite to
> that reached by [the Supreme] Court on a question of law or if the
> state court decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). *See also Henry v.*

*Poole*, 409 F.3d 48, 67-68 (2d Cir. 2005); *Cotto v. Herbert*, 331 F.3d 217, 248 (2d Cir. 2003)

(noting that "the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must

---

[7]I also note that a habeas petition with exhausted and unexhausted claims – a mixed
petition – may in any event be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

identify some increment of incorrectness beyond error in order to obtain habeas relief") (internal quotation marks omitted); *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001).

McLean does not clearly specify the basis for his various claims in his petition, Docket Entry 1, or in his reply affidavit, Docket Entry 11, and has not submitted a memorandum of law or similar document in support of his petition. Accordingly, throughout this report and recommendation, I have attempted to determine the basis for McLean's claims by reviewing his state court submissions in support of his Section 330 motion, on direct appeal, and in support of his Section 440 collateral attack.

## A.     Right to be Present

Petitioner first seeks habeas relief on the ground that he was denied the right to be present during certain critical stages of the proceedings. More specifically, McLean contends he was not present at a side bar conference during which certain prospective jurors were challenged, and that the waiver he executed did not surrender his right to be there. Habeas Pet. Ground 1; Pet'r Supp. Br. 12-18.

McLean raised this issue in a motion to vacate his conviction pursuant to Section 330 of the New York State Criminal Procedure Law. The court found no violation of petitioner's rights, stating that McLean's "allegation that he and counsel did not discuss which jurors he wished to challenge or seat is belied by the record." *See* Section 330 Decision at 4. Moreover, McLean raised this issue on direct appeal. Pet'r Supp. Br. 12-18. The Appellate Division rejected his argument as among those that were "unpreserved for appellate review or without merit." *McLean*, 772 N.Y.S.2d at 857, 5 A.D.3d at 608. It is well-settled that a ruling of this type is an

adjudication of the merits that triggers deferential review pursuant to 28 U.S.C. § 2254(d). *See Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *Brown v. Spitzer*, 2007 WL 2406870, at *3 (E.D.N.Y. Aug. 21, 2007).

Prior to *voir dire*, the court – apparently in McLean's presence – discussed a defendant's right to be present at side bar conferences during jury selection. Tr. 6. The court explained the options available to the defendant, including having all testimony from the potential jurors heard in open court or entrusting his attorney to speak for him in private conversations with jurors. Tr. 7-8. After this discussion, McLean's counsel represented to the court that McLean "[would] waive his presence at any side bar conferences that are required for an opportunity to discuss things with the jurors." Tr. 8. The court then provided McLean with a waiver form to read and discuss with his attorney. Tr. 8. McLean reviewed the form off the record with his counsel. Tr. 8. McLean then executed the waiver form, which states in pertinent part as follows:

> The undersigned has been advised of his right to be present when prospective jurors are questioned concerning their background, their ability to weigh the evidence objectively and to hear testimony impartially, and to hear and evaluate their answers to questions put to them in order to have the opportunity to assess the jurors' facial expressions, demeanor and other subliminal responses.
>
> I waive my right to be present during such sidebar conference voluntarily and knowingly after being fully apprised of my rights by the court and my attorney . . . I have had a full opportunity to discuss these matters with my attorney and any questions I may have had have been answered to my satisfaction.

The court asked whether McLean understood and signed the form, and McLean responded affirmatively. Tr. 8-9.

McLean acknowledges that he waived his right to be present at side bar conferences with respect to juror qualifications, backgrounds and biases. Pet'r Supp. Br. 13. McLean claims, however, that he did not waive his right to "confer with counsel as to which jurors would be challenged either for cause or peremptorily." *Id.* He claims specifically that he had a right to be present at a particular side bar conference where counsel discussed challenges to certain jurors. *Id.* at 12-18.

During the phase of jury selection where the defense and prosecution were exercising their peremptory challenges, and after ten jurors had been chosen, the court held an off-the-record bench conference with counsel. Tr. 907. After the conference, the following colloquy ensued on the record:

| THE COURT: | Based upon a conference between counsel, also in consultation with the court, it's my understanding that Mr. Klocek, who was originally challenged by the defense, you withdraw that challenge, is that correct? |
| MR. ZUCKER: | Yes. |
| MR. NIR:[8] | Yes. |
| THE COURT: | And Ms. Menalas, who was originally challenged by the People, you will withdraw that challenge? |
| MS. BATISTA: | Yes, your Honor. |
| THE COURT: | That would give us a jury of twelve persons. And as I just observed, counsel, you've conferred with your clients and discussed that with them, is that correct, Mr. Nir? |
| MR. NIR: | Yes. |

---

[8]Mr. Nir represented McLean at trial.

| | |
|---|---|
| THE COURT: | Mr. Zucker? |
| MR. ZUCKER: | Yes. |
| THE COURT: | And Mr. McLean and Mr. Vines, you understand that, is that correct? |
| DEF. VINES: | Yes. |
| DEF. McCLEAN: | Yes. |

Tr. 907-08.[9]  A similar colloquy then followed with respect to two persons selected as alternate jurors; the court again directly addressed the defendants and ensured that they understood what was taking place.  Tr. 908-09.  Despite these proceedings in which he participated, McLean claims that his waiver did not extend to this particular side bar conference, and that his absence violated his right to be present at all material stages of his trial.  Pet'r Supp. Br. 13.

Under federal law, a criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."  *Faretta v. California*, 422 U.S. 806, 819-20 n.15, 95 S. Ct. 2525, 2533 (1975).  *See also Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987).  This right generally includes the right to be present for the empaneling of the jury and the pre-screening of potential jurors.  *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002); *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998); *see also* FED. R. CRIM. P. 43(a).  The right, however, "is not absolute: it is triggered only when the

---

[9]McLean claims that the jury pool was exhausted, that the two remaining potential jurors were struck by the parties using peremptory strikes, and that the parties agreed to withdraw the challenges to prevent having to obtain more jurors.  Pet'r Supp. Br. 14.  Earlier in the jury selection process, the court did state that it hoped to obtain the full jury panel from the remaining jurors, but also carefully advised the attorneys that they were free to use their challenges as they thought appropriate.  Tr. 904.

defendant's 'presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Cohen*, 290 F.3d at 489 (citation omitted). Whether this right encompasses presence at *voir dire* side bar conferences is an open question. *See Sanchez v. Duncan*, 282 F.3d 78, 83 n.4 (2d Cir. 2002) (declining to decide whether there is a "clearly established" federal right to be present at *voir dire* side bar conferences); *Michaels*, 2002 WL 1732813, at *11 (holding that there is no clearly established federal law right to be present at side bar conferences).[10]

The side bar at issue here did not involve the questioning of a prospective juror. Rather, it appears that the only participants in the side bar conference were the trial judge and counsel, and that the only matter discussed was the withdrawal of previously exercised peremptory strikes. Courts in this Circuit have found that "absence during the exercise of challenges does not violate [a defendant's] constitutional rights provided he is present for juror questioning and the formal reading of challenges in open court." *Cohen*, 290 F.3d at 490 (citing *Evans v. Artuz*, 68 F. Supp. 2d 188, 195 (E.D.N.Y. 1999) and *Benitez v. Senkowski*, 1998 WL 668079, at *8 (S.D.N.Y. Sept. 17, 1998)). A defendant is afforded his rights when he is represented by counsel at the proceedings from which he was absent, he is present during the questioning of prospective

---

[10]Under state law, a defendant has a limited right to be present at *voir dire* side bar conferences. *People v. Antommarchi*, 590 N.Y.S.2d 33, 34-35 (1992). When a trial court is exploring a potential juror's background and potential for bias, a defendant must be present; on the other hand, if a court is simply questioning a juror about physical impairments, family and work obligations, and similar personal hardships unrelated to "bias, hostility or predisposition," the defendant's presence is not required. *Id*. Federal habeas relief is available, of course, only for violations of federal rights. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Therefore, a violation of McLean's state-law *Antommarchi* rights – if it occurred – would not be a cognizable ground for habeas relief.

jurors and is able to view them, he has an opportunity to confer with counsel regarding decisions about strikes, and the court makes a formal announcement of the stricken and seated jurors in open court. *Cohen*, 290 F.3d at 489-90 (finding that no violation of the defendant's rights occurred even though he was not present for four rounds of in-chambers juror challenges because the above requirements were met). Thus, it is clear that McLean's absence during the discussion at side bar regarding challenges did not violate his federal rights.

Moreover, even if McLean had a right to be present at the side bar, it is clear that he waived it. A defendant may waive his right to be present at trial, and that waiver may be explicit or "'implied from the defendant's conduct.'" *Clark v. Stinson*, 214 F.3d 315, 323-24 (2d Cir. 2000) (quoting *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995)). Failure to object at the time the decision is made to proceed without the accused can constitute a waiver. *See Clark*, 214 F.3d at 325 (finding that a colloquy on the record, "unaccompanied by any contemporaneous objection or other evidence indicating an involuntary or unknowing waiver," is sufficient to establish a waiver's validity); *see also Perez v. Greiner*, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005) ("[I]f the defendant was present in the courtroom during sidebar conferences and knew that the conferences were taking place, his failure to assert his right to be present at the time amounts to a waiver.").

McLean's participation in jury selection adequately protected his right to be present. As described above, McLean was present for jury selection and for all challenges other than those discussed at the side bar in issue. He was represented by counsel at the side bar from which he was absent and had several opportunities to confer with counsel before and after the side bar.

15

Finally, the court made a formal announcement of the stricken and seated jurors in open court and explicitly confirmed with McLean, on the record, that he had conferred with his counsel and understood what had happened. Under these circumstances, McLean's absence did not "frustrate the fairness of the proceedings" in any way. Accordingly, this aspect of McLean's petition should be denied.

## B.      Prosecutorial Misconduct

McLean next seeks habeas relief on the ground that the prosecutor's "prejudicial and burden-shifting" summation arguments deprived him of a fair trial. Habeas Pet. Ground 2. McLean claims that the prosecutor improperly shifted the burden of proof, vouched for the credibility of the prosecution witnesses, and denigrated the defense. Pet'r Br. App. Div. 11-13.[11]

McLean raised this claim on direct appeal, and the Appellate Division rejected it as "unpreserved for appellate review," citing New York Criminal Procedure Law Section 470.05, and, in any event, lacking in merit. *McLean*, 772 N.Y.S.2d at 857, 5 A.D.3d at 608. The Appellate Division's ruling constitutes a denial based upon an independent and adequate state law procedural ground that precludes habeas review. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (holding that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim") (internal quotation marks omitted).

Even if McLean had properly preserved this claim, I would recommend that it be rejected.

---

[11]"Pet'r Br. App. Div." refers to the Petitioner's first brief submitted to the Appellate Division in support of his appeal, dated January 2, 2003.

Federal law provides that improper arguments in a prosecutor's summation may violate a defendant's constitutional rights only if the misconduct is "egregious," and not mere ordinary error. *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1990) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48, 94 S. Ct. 1868, 1873 (1974)). Moreover, to provide a basis for habeas relief, the error must have caused substantial prejudice. *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004); *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). When determining whether prosecutorial misconduct has caused substantial prejudice, courts "consider the severity of the alleged misconduct, any curative measures taken by the trial court, and the likelihood of conviction absent the challenged conduct." *Newton*, 369 F.3d at 680.

A prosecutor is permitted to make arguments to the jury in support of the credibility of her witnesses. *See*, *e.g.*, *United States v. Spinelli*, 551 F.3d 159, 169 (2d Cir. 2008) ("[A] prosecutor is of course entitled to argue forcefully and vigorously to the jury in support of her witness's credibility."). Thus, statements by a prosecutor that submit credibility conclusions to the jury are not considered vouching and are not prejudicial. *Newton*, 369 F.3d at 681. Furthermore, "[w]here a substantial portion of the defense summation is devoted to attacks upon government witnesses . . . the prosecutor is entitled to make an appropriate response." *United States v. Clark*, 613 F.2d 391, 405 (2d Cir. 1979). *See also Hirsch v. Plescia*, 2005 WL 2038587, at *6 (E.D.N.Y. Aug. 23, 2005) ("[C]omments made by the prosecutor that defense counsel was misleading the jury or distorting the facts were not inappropriate, considering that the prosecutor was responding to similar comments from defense counsel."). Thus, "most Courts of Appeals . . . have refused to reverse convictions where prosecutors have responded reasonably

in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray." *United States v. Young*, 470 U.S. 1, 12, 105 S. Ct. 1038 (1985) (citing additional case law).

McLean first argues that the prosecutor improperly vouched for her witnesses andshifted the burden of proof by suggesting that the prosecution witnesses had no motive to lie. Pet'r Br. App. Div. 11-12; Tr. 1621. As an example, McLean cites a response by the prosecutor to defense counsel's challenge to the credibility of Thompson, a police officer who spoke with one of the defendants at the scene. The prosecutor posed the following question to the jurors: "So ask yourself what is [Thompson's] motive? Is he in this great conspiracy?" Tr. 1622. In addition, McLean argues that the prosecutor denigrated the defense when, in response to defense counsel's claim that the witnesses were inconsistent, she stated that defendants' attorneys "submit the witnesses were inconsistent, [yet] if they came in and testified word for word exact, I would say these counsel would be the first ones [to get] up and say they got their stories together." Pet'r Br. App. Div. 12; Tr. 1627.

McLean's challenges to the prosecutor's summation are clearly without merit. With one minor exception, the prosecutor did not vouch for her witnesses by injecting her own beliefs into her argument.[12] Nor did the prosecutor suggest that there may be "additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility." *Newton*,

---

[12]The prosecutor made one remark, "it's not often I have such a strong case," Tr. 1609, that might be considered as injecting her own opinion into her closing argument. The remark, however, was made in passing, and was immediately tied to the evidence presented in the prosecution's case. Tr. 1610 *et seq.* Under these circumstances, any impropriety in the remark is insufficient to warrant habeas relief. *See Spinelli*, 551 F.3d at 170.

369 F.3d at 681; *see also Spinelli*, 551 F.3d at 168-69. Thus, with the possible exception of the statement described in the footnote, there was nothing improper about the prosecutor's summation.

Furthermore, each of the prosecutor's remarks were invited by defense counsel's summation, which challenged the credibility of the prosecution's witnesses. Tr. 1592, 1597, 1600, 1602. For example, towards the end of defense counsel's summation, he stated, "It's not a mistake anymore. . . . [W]ho is lying and why? And unfortunately that's not my job, that's yours." Tr. 1602. He also stated, "[T]here are so many contradictions, controversies in this case . . . ." Tr. 1603. These statements by defense counsel justified the responses made by the prosecutor in her summation, such as her statement that defense counsel would have challenged the credibility of the prosecution witnesses just as forcefully had their testimony been identical.

Finally, petitioner has failed to demonstrate that he was prejudiced by the summation. In light of the overwhelming evidence of guilt, it is unlikely that, even if improper, any particular comment in the prosecutor's summation had a substantial effect on the jury's verdict. The remarks challenged by McLean were short statements in the context of a long trial. *See, e.g., Tankleff*, 135 F.3d at 253 (holding that the prosecutor's misconduct, consisting of two statements, was "short and fleeting" and denying habeas relief). For all these reasons, I recommend that this aspect of McLean's claim for habeas relief be denied.

## C.     Jury Charge

McLean's next challenge is directed at the trial court's jury charge. Habeas Pet. Ground 3. More specifically, McLean claims that the court gave an improper charge on

accomplice liability that relieved the prosecution of its burden to prove McLean's mental culpability. McLean raised this issue on appeal. Pet'r Supp. Br. 3-12. The Appellate Division rejected this argument as among those that were "unpreserved for appellate review or without merit." This constitutes a merits adjudication and triggers deferential review under 28 U.S.C. § 2254(d). *See Hawkins*, 460 F.3d at 242; *Brown*, 2007 WL 2406870, at *3.

Errors with respect to state jury instructions are generally not grounds for federal habeas relief. *See Gilmore v. Taylor*, 508 U.S. 333, 343-44, 113 S. Ct. 2112, 2118-19 (1993); *Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Rather, an erroneous jury charge may give rise to habeas relief only if the error deprives a defendant of a federal constitutional right:

> Before a federal court may overturn a conviction resulting from a state trial in which [an inadequate] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973).

Even if an error in the charge implicates a constitutional right, habeas relief may be granted only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 147, 94 S. Ct. at 400. *See also Waddington v. Sarausad*, 555 U.S. ___, ___, 129 S. Ct. 823, 831 (2009). In considering this question, the challenged instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72, 112 S. Ct. at 482

(quoting *Cupp*, 414 U.S. at 147, 94 S. Ct. at 400-01). *See also Gaines v. Kelly*, 202 F.3d 598, 606 (2d Cir. 2000); *Copeland v. Walker*, 258 F. Supp. 2d 105, 138 (E.D.N.Y. 2003).

At the close of evidence and prior to closing arguments, the court discussed the jury charge with counsel. Tr. 1534-37, 1551-56. The court confirmed with counsel its intention to charge the jury on acting in concert, and to include a statement that mere presence is insufficient to establish criminal liability. Tr. 1556. In its charge, the court instructed the jury that the prosecution bore the burden of proving defendant's guilt beyond a reasonable doubt as to every essential element of the charged crimes, and that the burden of proof never shifts. Tr. 1650-53. The court went on to emphasize to the jury the importance of separately considering the evidence applicable to each defendant. Tr. 1672.

The court then defined acting in concert as follows:

> When one individual engages in conduct which constitutes an offense, another person is criminally liable for that conduct when acting with the mental culpability required for the commission thereof, he himself engages in the conduct alleged to constitute the crime charged, or he solicits, requests, commands, importunes or intentionally aids such other person to engage in such criminal conduct.

Tr. 1683. The court proceeded to explain the two elements of accomplice liability. First, "the prosecution must prove that each defendant acted with the mental culpability required for the commission of the specific crimes charged." Tr. 1683. Second, "the prosecution must prove that each defendant himself engaged in the conduct alleged to constitute the crimes charged or that he solicited, requested, commanded, importuned or intentionally aided another or other in the commission of the conduct alleged to constitute the crime . . . ." Tr. 1684. The court cautioned

that it is not enough to be "merely associated with another person or persons who committed the alleged crimes" or "merely present." Tr. 1684-85. The court then stated that a "person who plays a minor role is just as guilty as the person who plays a major role" and "the law does not div[v]y up or apportion percentage of guilt." Tr. 1685. The court concluded this aspect of the charge by stating:

> if the prosecution fails to prove either or both of the essential elements of the law of acting in concert beyond a reasonable doubt with respect to either or both of the defendants, then you must find that the . . . defendant is not criminally liable for the conduct of any other participant or participants in the crime charged.

Tr. 1686-87. The court then proceeded to instruct the jury on the elements of the crimes charged.

McLean argues that the court's instruction to the jury to consider the evidence with respect to each defendant separately was inconsistent with the court's charge on acting in concert. McLean contends that, as a result of the instructions, "once the jury determined and concluded that [his co-defendant was] guilty of the crimes charged with the mental culpability required for the commission of the specific crimes charged, that guilt and mental culpability was then transferred to the appellant . . . ." Pet'r Supp. Br. 9.

The court's instruction to the jury – that a defendant may be found guilty of acting in concert to commit a crime only when, "with the mental culpability required for the commission thereof, he himself . . . solicits, requests, commands, importunes, or intentionally aids such other person to engage in such criminal conduct" – mirrors the language of the relevant statute. *Compare* Tr. at 1685 *with* N.Y. Penal Law § 20.00. When a jury instruction quotes the language of a state statute, a habeas petitioner claiming constitutional error faces "an 'especially heavy'

burden." *Sarausad*, 555 U.S. at __, 129 S. Ct. at 831 (citation omitted). To prevail, the petitioner must show that the instruction was ambiguous and that it is reasonably likely that the jury applied the instruction in a way that relieved the prosecution of its burden to prove each element of the charged crimes beyond a reasonable doubt. *Id*.

The instruction here was unambiguous and did not relieve the prosecution of its burden of proof. The instruction alerted the jury that they could convict McLean only by finding beyond a reasonable doubt that he himself engaged in or aided others to commit the charged crimes, and that he himself did so with the requisite mental culpability. Indeed, the court carefully alerted the jury that mere presence at the scene of a charged crime, or association with someone else who commits that crime, is insufficient. Accordingly, this aspect of the petition is without merit.

**D.     Response to Juror Notes**

McLean next claims that the trial judge failed to respond adequately to notes from the jury. Habeas Pet. Ground 4. More specifically, McLean contends that the court failed to respond appropriately to a jury note concerning accomplice liability and did not afford defense counsel an adequate opportunity to be heard before responding. Aff. Vacate Judg. ¶ 23.

McLean raised this claim for the first time in his motion to vacate. Concluding that the claim could have been raised on direct appeal, the state trial court found the claim procedurally barred pursuant to Section 440.10(2)(c) of the New York Criminal Procedure Law. Section 440 Decision. A procedural bar pursuant to Section 440.10(2)(c) is an adequate and independent state ground that precludes federal habeas review. *See*, *e.g.*, *Aparicio v. Artuz*, 269 F.3d 78,

92-93 (2d Cir. 2001); *Reyes v. Keane*, 118 F.3d 136, 139-40 (2d Cir. 1997).[13]  In any event, the

claim fails on the merits.

Federal law requires that the following procedures be followed when addressing

questions from the jury:

> (1) the jury's inquiry should be submitted in writing; (2) before the
> jury is recalled, the note should be read into the record in the
> presence of counsel and defendant; (3) counsel should be afforded
> an opportunity to suggest appropriate responses; and (4) after the
> jury is recalled, the request should again be read in their presence
> to assure that it accurately reflects their inquiry and that they all
> appreciate the question being asked.

*United States v. Leung*, 40 F.3d 577, 584 (2d Cir. 1994), *cited with approval in United States v.*

*Henry*, 325 F.3d 93, 106 (2d Cir. 2003).  Courts in this Circuit have noted that the "jury, not the

petitioner, is the best judge of whether the jury received a meaningful response to its jury notes

and whether it needed further instruction."  *Gillespie v. Miller*, 2004 WL 1689735, at *18

(S.D.N.Y. July 29, 2004) (citing *Franza v. Stinson*, 58 F. Supp. 2d 124, 146 (S.D.N.Y.1999)).

---

[13]When a state prisoner has defaulted on his federal claims in state court pursuant to an independent and adequate state procedural rule, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).  McLean attempts to demonstrate that the ineffective assistance of his counsel caused the default, stating that, "[w]ith respect to the jury note concerning re-defining 'in concert' counsel was ineffective for not requesting the court to instruct the jury regarding their responsibility to act with civility and to accord each other mutual respect while deliberating," and that "counsel[] fail[ed] to guard that the instructions to the jury [were] delivered in a neutral manner, [and] bear[] on a substantial right."  Aff. Vacate Judg. ¶ 34.  The court hearing petitioner's motion to vacate his conviction, however, held that McLean's jury note claim was barred because it was not raised on direct appeal, and not because it was not preserved at trial.  In any event, for the reasons discussed in the text, I conclude that the claim has no merit, and therefore that petitioner suffered no prejudice.

Here, the trial court followed the proper procedures. After the jury began deliberating, it sent two written notes to the court requesting, respectively, that "the definition of in concert [be] re-explained," and that "the elements of robbery in the first degree, burglary in the second degree, and robbery in the second degree be explained." Tr. 1769-70. The court read the notes into the record in the presence of counsel and the defendants and gave each party an opportunity to comment. Tr. 1770. The court then stated that its intention was to "recharge them on the law of acting in concert" and "reread the first counts pertaining to" the crimes charged. Tr. 1770. McLean does not appear to challenge the substance of the court's response, except insofar as he challenges the court's instruction on acting in concert. As discussed above, however, the court's acting in concert charge was not improper.

The only other note submitted by the jury read, "We are getting very hostile and we all feel we need a break." Tr. 1794. Again, the trial judge read the note aloud in the presence of counsel and the defendants and asked each side if they wished to be heard. *Id.* The court then allowed the jury a lunch break and provided them with appropriate instructions, as follows:

> I will say to you I was surprised to get this note that says you're very hostile, because if you recall from jury selection, we discussed the fact that deliberations involve a discussion and a sharing of views amongst all the members of the jury, and your role here is to evaluate the evidence and attempt to apply the law and attempt to reach a unanimous verdict. And there is nothing personal involved here . . . . You can disagree and you can maintain your differences without getting hostile . . . . every one of you has an important responsibility here and every one of you is working towards reaching a unanimous verdict if you can do that without violating your individual judgments . . . . by remaining calm and continuing to discuss it and try to see the other's point of view and respect one another's point of view, you can work towards hopefully reaching a unanimous verdict.

Tr. 1795-96. No objection was made to the court's response to the jury's note. Tr. 1798. Moreover, as the portion of the court's response quoted above amply demonstrates, there is simply no basis for petitioner's suggestion that the court failed to instruct the jurors to treat each other civilly and with mutual respect. *See* Aff. Vacate Judg. ¶ 34.

It is clear that the trial court responded appropriately to each note from the jury, and that McLean was not prejudiced in any way by the court's responses. *See Henry*, 325 F.3d at 106 (noting that a failure to follow proper procedures does not require reversal absent prejudice). This aspect of the petition should be rejected as well.

**E.     Verdict Sheet**

McLean next contends that the verdict sheet submitted to the trial jury was improper because it "listed not only the counts of the indictment but also incorrectly included some of the statutory elements of the crime charged and additional explanatory language next to the counts." Habeas Pet. Ground 5; Aff. Vacate Judg. ¶ 25. McLean raised this claim for the first time in his motion to vacate, and the court therefore rejected the claim on procedural grounds pursuant to Section 440.10(2)(c) of the New York Criminal Procedure Law. Section 440 Decision. As noted above, a decision by the state court pursuant to Section 440.10(2)(c) is an adequate and independent state ground that forecloses federal habeas review. In any event, the claim fails on the merits.

The court prepared two versions of the verdict sheet. Tr. 1559. The court's preferred version included in brackets the names of the alleged victim to which each particular count pertained. Tr. 1560. During the charge conference, the court explained that it favored including

26

victim names because, in the judge's experience, jurors in cases with multiple victims often seek

to have the counts reread to help them keep track of which victim or event relates to which count.

Tr. 1560.  Counsel agreed to the notations, provided that the court advised the jury that the victim

names were included for ease and convenience, and not to suggest that the court wished them to

reach any particular verdict.  Tr. 1560-61.  The court then confirmed that the verdict sheet was

acceptable to defense counsel.  Tr. 1561.[14]

During its charge to the jury, the court described the verdict sheet and explained that the

name of the alleged victim to which each count pertained appeared in brackets underneath each

charge.  Tr. 1689.  The court then stated that

> this is in order to assist you in your deliberations . . .  you are not to
> infer from the fact that I instruct you or refer to any particular
> portion of the evidence or that I prepare a verdict sheet in any
> particular way, that I have any opinion or am suggesting to you in
> any way as to what your verdict should or should not be in this
> case.  I have no opinion as to how you decide this case . . . .  I'm
> just showing you this now because as I read to you and instruct you
> as to each count, I don't want you to be concerned that, oh, how am
> I going to remember all of these counts and what count pertains to
> what person.

Tr. 1689.

Short notations on verdict sheets are proper when included to assist the jury in

distinguishing the numerous counts with which a defendant is charged.  *See Miller v. Greene*,

2005 WL 2757218, at *4 (E.D.N.Y. Oct. 25, 2005) (finding that "notations were not suggestive

in any way, nor could they possibly have been mistaken by the jury as anything more than a

---

[14]While it is not this Court's task to determine whether the verdict sheet complied with
state law, I note that verdict sheet notations like the ones used here are expressly permitted by
New York Criminal Procedure Law Section 310.20.

shorthand reference to the actual instructions the judge gave orally"); *Flores v. Greiner*, 2000 WL 1052054, at *10 (E.D.N.Y. June 19, 2000) (noting that annotated verdict forms have frequently been approved by federal courts, and even commended by the Second Circuit for promoting informed consideration by the jury). Even if the verdict form were erroneous, habeas relief would not be warranted unless the error infected the entire trial to such a degree as to violate due process. *Miller*, 2005 WL 2757218, at *4; *Flores*, 2000 WL 1052054, at *10.

For all these reasons, petitioner has failed to demonstrate that the notations were improper. They were not suggestive, and they could not have been interpreted by the jury as anything more than a guide to the allegations and evidence pertinent to each count. Counsel had every opportunity to discuss the verdict sheet with the court, and expressed satisfaction with it before the jury was charged. I therefore recommend that this claim be rejected as well.

## F.     Ineffective Assistance of Counsel

McLean next claims that he was denied the effective assistance of trial counsel. Habeas Pet. Ground 6. McLean claims that trial counsel failed to 1) prepare an adequate defense or perform an adequate investigation into witnesses, specifically regarding a potential defense of duress, 2) obtain the testimony of McLean's co-defendant at trial, 3) acquire sufficient information from the prosecution's witnesses for a rebuttal case, 4) advise McLean properly on a guilty plea offer made by the prosecution, 5) protect McLean's right to be present during jury selection, and 6) request that the trial judge instruct the jurors on their responsibility to deliberate with civility and mutual respect. *See* Aff. Vacate Judg. ¶¶ 33-34, 41-52; Pet'r Supp. Br. at 19-21.

The general standards governing ineffective assistance of counsel claims have long been

well-settled.  *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  A claim of ineffective assistance requires a showing that counsel was deficient and that the deficiency resulted in prejudice.  *Id.* at 687, 104 S. Ct. at 2064.  Counsel's performance must be reviewed objectively and measured for "reasonableness under prevailing professional norms."  *Id*. at 688, 104 S. Ct. at 2065.  Moreover, a reviewing court must make "every effort to eliminate the distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy."  *Id*. at 689, 104 S. Ct. at 2065.  Even if counsel was deficient, the claim may be established only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694, 104 S. Ct. at 2068.  "It is not enough . . . to show that the errors had some conceivable effect on the outcome" since virtually all of counsel's acts have some effect.  *Id*. at 693, 104 S. Ct. at 2067.  Notably, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  *Id.* at 696, 104 S. Ct. at 2069.  Moreover, when reviewing a habeas petition, "doubly deferential judicial review" applies: the question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.  *Knowles v. Mirzayance*, 556 U.S. _, 2009 WL 746274, at *8 (Mar. 24, 2009); *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852 (2002).

I now turn to McLean's specific ineffective assistance contentions.

### 1. Pre-Trial Investigation

McLean alleges that his attorney failed to conduct any pre-trial investigation or gather information to rebut the prosecution's proof.  Aff. Vacate Judg. ¶¶ 47-48.  According to McLean, his trial counsel failed to hire an investigator to seek out helpful witnesses or to investigate himself whether witnesses to the crime might provide exculpatory testimony.  Pet'r Supp. Br. 19. McLean further argues that he provided his attorney with the names of two witnesses who were with him before he entered the Integrated Cable Installations building and that these individuals could have helped McLean establish an affirmative defense of duress.  Aff. Vacate Judg. ¶ 43.

McLean raised his claim regarding the adequacy of counsel's investigation in his post-trial motion to vacate his conviction pursuant to New York Criminal Procedure Law Section 330.30.  The court found that McLean's claim was unsupported by the record.  Section 330 Decision.  Therefore, AEDPA deference applies.

Petitioner's conclusory assertions, absent additional specific support, are insufficient to overcome the strong presumption that counsel acted reasonably.  *See*, *e.g.*, *United States v. Vargas*, 920 F.2d 167, 170 (2d Cir. 1990) (finding that petitioner's affidavit making allegations in a "conclusory fashion" failed to demonstrate that counsel's decision not to call a witness was unreasonable); *see also Boyd v. Hawk*, 965 F. Supp. 443, 452 (S.D.N.Y. 1997) ("'[A] bald assertion that counsel should have conducted a more thorough investigation fails to overcome the presumption that counsel acted reasonably.'" (quoting *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995)).  To prevail on a claim that counsel's pre-trial investigation was lacking, a petitioner must demonstrate what a more thorough investigation would have yielded; thus, "[i]n

nearly every case that concludes that counsel conducted a constitutionally deficient investigation, the courts point to readily available evidence neglected by counsel." *Greiner v. Wells*, 417 F.3d 305, 322 (2d Cir. 2005) (citing additional cases and finding a failure to investigate allegation to be merely a disagreement about trial strategy); *see also Slevin v. United States*, 1999 WL 549010, at *5 (S.D.N.Y. July 28, 1999) (rejecting a claim for ineffective assistance, stating that petitioner "has not explained how further discovery, additional research or increased communication would have uncovered facts or arguments to support a successful defense"); *Matura*, 875 F. Supp. at 238 (rejecting claim that counsel failed to investigate evidence because petitioner did not explain "how such investigation, consideration, or presentation would have helped to cast doubt on petitioner's guilt").

The record regarding McLean's Section 330 motion demonstrates that his trial counsel did in fact conduct his own investigation, which included efforts to interview witnesses and a visit to the crime scene, and that counsel felt prepared for trial. July 10, 2000 Tr. at 7-8, 10, 12-18. Indeed, the court stated, "from what I observed in this courtroom, and this trial is very fresh in my mind certainly, I didn't see anything that would indicate to me that you [McLean's trial counsel] were less than very well prepared." *Id.* at 19. McLean has made no showing whatsoever that further investigation would have yielded any exculpatory evidence, nor has he named, found, or acquired affidavits from the witnesses he alleges counsel failed to interview or subpoena.[15] McLean has also failed to provide even a description of how the testimony of these

---

[15]It appears from the record that McLean's original counsel, who died prior to McLean's trial, maintained a file that was not provided to the lawyer who defended McLean at trial. July 10, 2000 Tr. at 12-13. However, McLean's trial attorney testified that he received the relevant documents from the file, including police reports, hearing minutes, and transcripts of testimony,

supposed witnesses could have helped exculpate him or establish a duress defense. McLean

claims only that these witnesses "were with him along with the other co-defendant's [sic] from

5:00 o'clock that day until the defendant entered the Installations building at 6:20 pm." Aff.

Vacate Judg. ¶ 43.

In short, apart from his conclusory assertions that unnamed witnesses were available to

provide unspecified testimony, McLean has failed to identify any investigative steps counsel

could have taken that would have had a reasonable probability of affecting the outcome of his

trial. This aspect of McLean's ineffective assistance claim should therefore be denied.

### 2. Calling Co-defendant to Testify

McLean next contends that it was ineffective for his counsel not to call his co-defendant

to testify at trial. Pet'r Supp. Br. 20. McLean raised this issue on appeal. *Id*. The Appellate

Division rejected this argument as among those that were "unpreserved for appellate review or

without merit," and its decision is therefore entitled to deferential review under Section 2254(d).

"The decision not to call a particular witness is typically a question of trial strategy that

[reviewing] courts are ill-suited to second-guess." *United States v. Luciano*, 158 F.3d 655, 660

(2d Cir. 1998). Thus, a habeas petitioner's "complaints of uncalled witnesses are generally

looked upon with disfavor, especially where the only evidence of their testimony is from the . . .

petitioner himself." *Warren v. Brunell*, 1997 WL 67828, at *4 (W.D.N.Y. Feb. 11, 1997); *see

also Caronia v. Jones*, 1988 WL 83186, at *1 (E.D.N.Y. June 30, 1988) ("[C]omplaints of

---

in advance of trial. McLean claims that his prior counsel engaged an investigator and that the
investigator's reports were never obtained by trial counsel. As the court noted at the motion
hearing, there was no indication then – and there is none now – that this alleged investigator had
developed any relevant information that would have affected the outcome of the trial. *Id.* at 20.

uncalled witnesses are not favored [in federal habeas review], because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.") (alterations in original) (internal quotation marks omitted).

McLean makes no showing at all to support the dubious proposition that his co-defendant would have been willing to testify, or that any testimony the co-defendant could have provided would have assisted McLean's case. This failure is fatal to this prong of his ineffective assistance claim. *See, e.g.*, *Vargas*, 920 F.2d at 170 (rejecting ineffective assistance claim based on counsel's failure to call a co-defendant and other witnesses to testify because of inadequate showing that their testimony would have been helpful).

### 3. Advice From Counsel Regarding Plea Offer

McLean next claims that trial counsel failed to advise him properly with respect to a plea offer. Prior to the start of the trial, the prosecution offered to allow McLean to plead guilty and, in return, receive a prison sentence of eight years. McLean claims that he "declined the offer based solely on" advice from his counsel "that he was going to testify concerning his affirmative defense of duress . . . and chances of acquittal were great without having to pursue a defense." Aff. Vacate Judg. ¶ 50. McLean claims that when he asked counsel whether he should accept the offer, counsel stated that he should not "because he would not be found guilty under the theory of 'in concert.'" *Id*. McLean contends that, "[h]ad counsel given petitioner the benefit of professional advice on this crucial decision," he "may have accepted the eight-year offer." Pet'r Habeas Reply ¶ 14 n.2. McLean contends that he was prejudiced because counsel's alleged

failure to advise him properly about the plea offer "resulted in a twenty year sentence." Aff. Vacate Judg. ¶ 52.

Petitioner properly exhausted this claim by raising it in his Section 440.10 motion. *See*, *e.g.*, *Watkins v. Perez*, 2007 WL 1344163, at *6 (S.D.N.Y. 2007) ("[I]n general, post-judgment attacks on trial counsel's assistance should be made by a motion pursuant to N.Y. Crim. Proc. Law § 440.10."); *Quinones v. Miller*, 2003 WL 21276429, at *21 & n.34 (S.D.N.Y. June 3, 2003). The claim was denied on the merits, and AEDPA deference thus applies.

A defendant is entitled to effective assistance of counsel during out-of-court proceedings such as plea negotiations and discussions about sentence exposure. *See*, *e.g.*, *Boria v. Keane*, 99 F.3d 492, 497-98 (2d Cir.1996) (holding that counsel's failure to provide effective advice during plea negotiations warranted habeas relief); *see also United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (vacating conviction on ineffective assistance grounds where counsel's advice "grossly underestimat[ed]" defendant's sentencing exposure).

When advising a client with respect to a plea offer, counsel must, at a minimum, communicate the terms of the offer and describe the alternative sentences to which the client will most likely be exposed. *See Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999); *Gordon*, 156 F.3d at 380 ("'[K]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992))). Although "reasonable professional conduct does not under all circumstances require a lawyer to give an explicit opinion as to whether a client should take a plea offer," *Purdy v. United States*, 208 F.3d 41, 48 (2d Cir. 2000), a criminal defense lawyer has a duty "'to advise his client fully on whether a particular plea to a

charge appears desirable,'" *Gordon*, 156 F.3d at 380 (quoting *Boria*, 99 F.3d at 496). Mere failure to advise a client to plead guilty does not by itself constitute ineffective assistance, yet if the advice to reject the plea is unreasonable, petitioner may be entitled to relief. *Compare Purdy*, 208 F.3d at 47 (holding that counsel was not ineffective for failing to advise his client whether or not to plead guilty in a case where, "[i]f [the] decision to go to trial turned out to be unwise, it was at least reasonable"), *with Boria*, 99 F.3d at 495-98 (finding ineffective assistance of counsel where there was no reasonable chance of acquittal and defense counsel "never gave his client any advice or suggestion as to how to deal with the People's offered plea bargain"). Even so, "the ultimate decision whether or not to plead guilty must be made by the defendant. It is crucial that counsel refrain from coercing a client into either accepting or rejecting a plea offer." *Logiudice v. United States*, 2008 WL 835714, at *2 (E.D.N.Y. Mar. 28, 2008) (citing *Jones v. Murray*, 947 F.2d 1106, 1111 (4th Cir. 1991)).

A petitioner claiming ineffective assistance with respect to advice concerning a plea offer "must show that (1) the attorney failed to communicate a plea offer or failed to provide adequate advice about the plea and sentencing exposure, and (2) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer." *Faulkenson v. Conway*, 2007 WL 160926, at *11 (E.D.N.Y. Jan. 10, 2007) (citing *Purdy*, 208 F.3d at 49). Here, it is clear that McLean understood the terms of the plea agreement offered by the prosecution and the potential sentences he faced. Before commencing jury selection, the court explained the prosecution's plea offer to McLean and his co-defendant on the record, specifically alerting them that, while a plea would result in a sentence of eight years, a guilty verdict after trial could result in a substantially longer sentence. Tr. 50. Indeed, the court

emphasized that McLean's prior record and the fact that there were multiple victims would likely increase his sentence if he were found guilty.  Tr. 50.  The court also explained to McLean that his prior convictions would be admissible at trial for impeachment purposes if he testified, and warned McLean that he "may be at a disadvantage at a trial since [he] may not be able to take the witness stand."  Tr. 51.  While the court's explanation of the some of the risks of proceeding to trial is not a substitute for counsel's advice, the record plainly demonstrates that McLean was aware that the prosecution had offered a plea and the terms of the plea offer, that a conviction after trial would likely result in a substantially longer prison term than contemplated by the plea offer, and that the admissibility of his felony record might lead his counsel to advise him against testifying in his own defense and provide a basis for an increased sentence.  It seems highly unlikely, with this much information put before him, that McLean would not have sought an opportunity to consult with his attorney about the plea offer if he had not already done so.  *See Alexander v. Walker*, 2004 WL 1857575, at *6 (S.D.N.Y. Aug. 19, 2004).

Moreover, McLean's trial counsel has submitted an affirmation to this court that refutes McLean's contention that counsel did not advise him with respect to the prosecution's plea offer.  Nir Affirmation ("Nir Aff."), Docket Entry 17.  Although counsel acknowledges in his affirmation that he does not recall the specific plea offer made to McLean, he also states that it is his consistent practice to discuss plea offers with all of his clients.  Moreover, counsel specifically recalls speaking with McLean about various offers and discussing "at length with him the pros and cons of any disposition."  Nir Aff. ¶¶ 8, 11.

I credit trial counsel's affirmation.  In this regard, I note that McLean has previously made false statements in an attempt to reduce or vacate his sentence.  For example, McLean asserted in

his Section 330 motion that his trial counsel lied to him and failed to properly discuss the seating of the jurors with him. *See* July 10, 2000 Tr. at 11-12, 21. The state court rejected McLean's contention, as it was clear from the record that McLean was misstating the truth. *See* Section 330 Decision (stating that "[McLean's] allegation that he and counsel did not discuss which jurors he wished to challenge or seat is belied by the record"). As another example, McLean contends that he declined the offer to plead guilty on the understanding that he would be able to testify in his own defense, thus implying that he was denied the opportunity to testify. Aff. Vacate Judg. ¶ 50. During the trial, however, the judge explicitly advised McLean that the decision whether or not to testify was his, and McLean confirmed that he understood the court and had himself decided not to testify in his own defense. Tr. 1509. Finally, as noted above, McLean, had he not already done so, would undoubtedly have sought time to discuss the plea offer with counsel once advised by the trial judge of the risks of proceeding to trial. Accordingly, I do not find McLean credible on the issue of whether his attorney properly advised him concerning the prosecution's plea offer.

In any event, McLean has failed to demonstrate prejudice. To establish prejudice, McLean must demonstrate that there is a "reasonable probability" that he would have accepted the prosecution's plea offer. *See Aeid v. Bennett*, 296 F.3d 58, 63-64 (2d Cir. 2002) (rejecting an ineffective assistance of counsel claim, despite counsel's deficient performance, because defendant failed to show that his decision about pleading guilty rather than proceeding to trial would have been different). The Second Circuit has recognized that, in most circumstances, a petitioner's self-serving, post-conviction testimony is not likely to be credible, and that a demonstration of prejudice typically requires some additional objective evidence. *Gordon,* 156 F.3d at 380-81.

McLean offers only his own statement as evidence that he would have accepted the plea offer had he received proper advice. McLean's statement is suspect for several reasons. First, as noted above, the trial court explicitly reviewed the terms of the offer before bringing in the jury, and also alerted petitioner to the risk of testifying in his defense. Nevertheless, McLean rejected the plea without seeking additional time to speak to his attorney. Second, and also as discussed above, McLean's counsel has submitted an affirmation in which he states that he reviewed the risks and benefits of pleading guilty with McLean. Counsel's affirmation also points out that the prosecution's offer was contingent on both McLean and his co-defendant agreeing to plead guilty. Nir Aff. ¶ 8. However, McLean's co-defendant proceeded to trial, so it is unclear whether McLean would have had the opportunity to plead guilty even if he sought to do so. In any event, McLean's statements must be viewed with some skepticism in light of his felony record and prior experience with the criminal justice system. *Alexander*, 2004 WL 1857575, at *7 (noting that petitioner's claim that he was not advised about a plea offer was not credible because he was a prior offender with an understanding of the criminal justice system). Finally, McLean has protested his innocence both in his submissions to this court, Pet'r Habeas Reply ¶ 4, and during a conference in state court after he filed his Section 330 motion, July 10, 2000 Tr. at 12, rendering it unlikely he would have entered a guilty plea. *See Alexander*, 2004 WL 1857575, at *7 (finding that, where the defendant maintains his innocence, it is not likely that he would be willing to plead guilty).[16]

---

[16]Any discrepancies between McLean's allegations and the statements in his counsel's affirmation are, for the reasons discussed in the text, insufficient to warrant a hearing. A hearing is not necessary where there is "sufficient evidence in the record" to decide the issues presented in a habeas petition, especially where, as here, a credible affidavit from trial counsel is submitted to the court. *Alexander*, 2004 WL 1857575, at *7 n.5 (noting that district courts have discretion

For all these reasons, McLean's claim that he received ineffective assistance of counsel with respect to the prosecution's plea offer should be denied.

### 4. Protection of Right to be Present During Jury Selection

McLean contends that his trial counsel failed to protect his rights during jury selection. Pet'r Habeas Reply 15-16. According to McLean, although he had a right to be present when the jurors were selected, counsel chose jurors outside of his presence. This claim has no merit. As described above in Section A, McLean's right to be present was not violated. This prong of McLean's ineffective assistance claim should therefore be rejected as well.

### 5. Requesting Jury Instructions

McLean also claims that trial counsel was ineffective "for not requesting the court to instruct the jury regarding their responsibility to act with civility and to accord each other mutual respect while deliberating" when re-charging the jury on acting in concert. Aff. Vacate Judg. ¶ 34. As discussed above, however, when the jury sent a note indicating that some hostility was developing and seeking a break, the judge responded appropriately and there was no basis upon

---

to decide when a hearing is necessary, citing *United States v. Pham*, 317 F.3d 178, 184 (2d Cir 2003)). *See also Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) ("The district court reasonably decided that the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions. . . . [The petitioner] bore the burden of proving his claim. His proffer involved a generic claim . . . solely on his own highly self-serving and improbable assertions. Trial counsel's detailed description of events was eminently credible."); *Farr v. Greiner*, 2007 WL 1094160, at *33 (E.D.N.Y. Apr. 10, 2007) ("Notwithstanding the dispute as to whether petitioner provided counsel with a letter, an evidentiary hearing is not required because the affidavits presented provide a sufficient basis to resolve petitioner's charge."); *Philippe v. United States*, 2007 WL 13414, at *3 (E.D.N.Y. Jan. 2, 2007) (noting that petitioner's ineffective assistance claim failed where petitioner's counsel's affidavit contradicted his claim); *Savinon v. Mazucca*, 2006 WL 2669331, at *4 (S.D.N.Y. Sept. 18, 2006); *Fraser v. Burrell*, 2006 WL 2792760, at *3 (E.D.N.Y. Sept 1, 2006); *Castrillo v. Breslin*, 2005 WL 2792399, at *14 (S.D.N.Y. Oct. 26, 2005).

which counsel might have requested an additional or different instruction.  *See* Tr. 1795-96.  This aspect of McLean's ineffective assistance claim is therefore without merit.

## G.     Unreasonable Delay in Sentencing

McLean's final claim is that his sentencing was unreasonably delayed.  Pet. Habeas Ground 7.  The jury verdict convicting McLean was returned on May 23, 2000.  McLean was sentenced on September 6, 2001, almost sixteen months later.  McLean first claimed that his sentencing was unreasonably delayed in violation of his rights in his Section 440 motion.  Aff. Vacate Judg. ¶ 60.  The court found that the claim was procedurally barred and in any event without merit.  Section 440 Decision.  AEDPA deference thus applies.

Whether a defendant has a clearly established constitutional right to a speedy sentence is subject to question.  *Brown v. Donelly*, 258 F. Supp. 2d 178, 181 (E.D.N.Y. 2003).  The Supreme Court, examining the validity of a sentence, has "assume[d] arguendo that sentence is part of the trial for purposes of the Sixth Amendment," and stated that "[w]hether delay . . . such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances.  The delay must not be purposeful or oppressive."  *Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 486 (1957) (internal citations omitted).  When evaluating a claim that a defendant's due process rights were violated by a delay in imposing sentence, the relevant factors are "the length of the delay, the reason for the delay, the petitioner's assertion of his right and prejudice to the petitioner."  *Brown*, 258 F. Supp. 2d at 182.

Applying these factors here makes it plain that any delay in sentencing did not violate McLean's constitutional rights.  First, the length of the delay, as noted above, was approximately sixteen months.  The Second Circuit has found delays in sentencing longer than twenty-three

months to be reasonable.  *United States v. Bryce*, 287 F.3d 249, 256 (2d Cir. 2002); *see also*

*United States v. Tortorello*, 391 F.2d 587, 589 (2d Cir. 1968) (delay of almost thirty-six months

not unreasonable).  Second, with respect to the reasons for the delay, the court reviewing

McLean's Section 440 motion found that the following factual circumstances rendered any delay

appropriate:

> In this case, the delay in sentencing was occasioned by defendant's
> filing a CPL 330.30 motion after his conviction, the assignment of
> new 18-b counsel, the time during which the voluminous trial
> transcript was being prepared by the court reporter and the
> numerous subsequent adjournments requested by counsel in order
> to review the minutes, the filing of the superseding motion, the
> time allowed for the People's response and the Court's decision
> thereon.  Additionally, the record reveals that the defendant refused
> to appear in court on one of the adjourned dates.  Upon the
> determination of defendant's motion, he was sentenced without
> undue delay.

Section 440 Decision at 4-5.  Many of these same facts were reviewed, without objection by

McLean, at his sentencing.  Sent'g Tr. at 5-6.

     Under AEDPA, "a determination of a factual issue made by a State court shall be

presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption

of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Here, the facts relied

upon by the state court cannot be seriously disputed, and McLean makes no attempt to challenge

them.  Finally, it does not appear from the record of the state court proceedings that McLean ever

objected to the delay in his sentencing or that the delay prejudiced him in any way.  McLean was

not sentenced to time served, deprived of an opportunity to serve another sentence concurrently,

or hampered in his presentation at sentencing because evidence or witnesses became unavailable

over time.  For all these reasons, this final prong of McLean's petition should be rejected as well.

## Conclusion

For all of the reasons stated above, I respectfully recommend that McLean's habeas petition be denied in all respects. Any objections to this report and recommendation must be filed within ten days of receipt and in any event no later than May 4, 2009. Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 14, 15 (2d Cir. 1989).

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
April 15, 2009

A COPY OF THIS REPORT AND RECOMMENDATION WAS SENT ON THIS DAY TO:
Ahmed McLean
#01A5431
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821

U:\ASB 2007-2008\McLean v Green\r&r 041409.wpd